**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shebli Geegieh, | No. CV-24-02993-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Unknown Parties, et al., | |
| Defendant. | |

Pending before the Court is Defendant X Corp.'s ("Defendant" or "X Corp.") Motion to Dismiss (Doc. 21) Plaintiff Shelbi Geegieh's First Amended Complaint ("FAC") (Doc. 21) under FRCP 12(b)(1), 12(b)(2) and 12(b)(6). Plaintiff filed a Response (Doc. 34), and Defendant filed a Reply (Doc. 35). After considering the briefing and the relevant case law, the Court will **grant** Defendant's Motion and dismiss the claims against X Corp. without leave to amend.

## I.   BACKGROUND

This case arose from a series of alleged defamatory statements directed at Plaintiff made by unidentified users of X Corp.'s online social media platform, X.com. (Doc. 21 at 2–3.) These unidentified users, named as Defendants John and Jane Does, "posted false content for the sole purpose of Doxing and Defam[ing]" Plaintiff. (*Id.* at 2.) Those Defendants accused Plaintiff of being a convicted felon and published private information about his family. (*Id.* at 3) Plaintiff repeatedly requested that X Corp. remove the content but it failed to do so. (*Id.*)

In Count I, plaintiff asserts a claim for defamation and slander. (*Id.* at 4.) The

specific allegations are that Defendants, seemingly including X Corp., published false and defamatory statements about Plaintiff on X.com. (*Id.*) Plaintiff thereafter recites the general elements for a defamation claim. (*Id.*) In Count II, Plaintiff asserts a claim for intentional infliction of emotional distress ("IIED"). (*Id.* at 4.) There are no IIED allegations directed at X Corp. (*See id.*) Plaintiff merely recites the elements of IIED before positing that the actions of the unidentified users harmed him. (*See id.*)

## II.     LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction. Federal courts are courts of limited jurisdiction and may only hear cases as authorized by the Constitution or statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court has subject-matter jurisdiction over claims that "aris[e] under the Constitution, laws, or treaties of the United States" and over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" diverse parties. 28 U.S.C. §§ 1331, 1332(a). Because our jurisdiction is limited, it is to be presumed that a cause lies outside of it, and the burden of establishing jurisdiction is on the party asserting it. *Kokkonen*, 511 U.S. at 377.

Because subject-matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived. *United States v. Cotton*, 535 U.S. 625, 630 (2002). Therefore, if the Court determines at any point that it lacks subject-matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

### B. Federal Rule of Civil Procedure 12(b)(2)

Personal jurisdiction refers to the power that a court has over the parties. This jurisdiction is proper when it is provided for by law and the exercise of jurisdiction comports with due process. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Arizona has authorized its courts to

exercise jurisdiction over persons "to the maximum extent permitted by . . . the United States Constitution." Ariz. R. Civ. P. 4.2(a).

Due process requires the defendant have at least "minimum contacts" with the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). When analyzing sufficient minimum contacts, courts distinguish between general jurisdiction and specific jurisdiction. General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state, whereas specific jurisdiction exists when the controversy arises from or is related to the defendant's contact with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). The court "employ[s] a three-part test to assess whether a defendant has sufficient contacts with the forum state" to establish specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

### C. Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

### III. DISCUSSION

### A. Subject Matter Jurisdiction

A Magistrate Judge issued a Report and Recommendation ("R&R") in this case, recommending dismissal of Plaintiff's initial Complaint (Doc. 1) with leave to amend because the pleading failed to present a federal question. (*See* Doc. 20 at 3.) In his FAC, Plaintiff did not add any claim raising a federal question. (*See generally* Doc. 21.) Thus, the present inquiry is whether Plaintiff has alleged enough facts to invoke diversity jurisdiction.

The allegations regarding jurisdiction are as follows: Plaintiff is a citizen of Arizona and the various Defendants "are domiciled in different states. Specifically, Defendant X, Corp." (Doc. 21 at 3.) Defendant X Corp.'s company address is in San Francisco, California, and its statutory agent resides in Carson City, Nevada. (Doc. 21 at 2 ¶ 2.)

"On a 12(b)(1) motion to dismiss, the party asserting diversity jurisdiction bears the burden of proof." *Ibeabuchi v. Arizona State Univ.*, No. 08-2270-PHX-JAT, 2009 WL 1804980, at *2 (D. Ariz. June 24, 2009). 28 U.S.C. § 1332 (c)(1) states: "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."

The FAC is woefully deficient in its attempt to satisfy the diversity requirements. The R&R explained to Plaintiff that "diversity jurisdiction depends upon the 'citizenship' of a party, not their residence, domicile, or headquarters." (Doc. 20 at 7.) In his Response to the instant Motion, Plaintiff argues that he already established jurisdiction before Judge Metcalf, (*see* Doc. 34 at 12 (citing Doc. 18 (response to Order to Show Cause)), but his FAC lacks any allegations regarding X Corp.'s state of incorporation or principal place of business, (*see generally* Doc. 21). On a Rule 12 motion, the Court focuses on what the plaintiff has written in the complaint. *See Ctr. for Biological Diversity v. United States Forest Serv.*, 746 F. Supp. 3d 749, 755 (D. Ariz. 2024). Because the FAC fails to properly allege federal question or diversity jurisdiction, the Court lacks subject matter jurisdiction over Plaintiff's claims.

**B.  Personal Jurisdiction**

Defendant argues that the FAC lacks the requisite allegations to show that the Court

has personal jurisdiction over it. (Doc. 28 at 12.) In response, Plaintiff argues that, because X Corp.'s online social media website is available nationwide, the Court ought to have personal jurisdiction over Defendant. (Doc. 34 at 12.)

To show that the Court has jurisdiction over X Corp., Plaintiff must demonstrate that the company had "sufficient minimum contacts with Arizona such that the maintenance of the suit in this state does not offend traditional (federal and state) notions of fair play and substantial justice." *Meyers v. Hamilton Corp.*, 143 Ariz. 249, 252 (1984) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)). The traditional minimum contacts analysis requires the Court to determine whether it has "general" or "specific" personal jurisdiction over X Corp. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017). General jurisdiction exists over entities where its forum state "affiliations" are "so continuous and systematic as to render [it] essentially at home." *Daimler*, 571 U.S. at 139. In the context of corporations, an entity is "at home" in its place of organization and its principal place of business. *Daimler*, 571 U.S. at 139.

The FAC is bereft of allegations to support general jurisdiction. There are no allegations of X Corp.'s place of incorporation or principal place of business. *See Daimler*, 571 U.S. at 139. Likewise, there are no allegations regarding X Corp.'s Arizona affiliations. *Id.*; *cf. Al-Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118, 125–126 (S.D.N.Y. 2021) (finding that Twitter, the predecessor to X Corp., was not subject to general jurisdiction in New York state simply because of its business presence and operation in the state). Consequently, there is nothing to support a finding of general jurisdiction over X Corp.

Specific jurisdiction exists when an out-of-state defendant (1) purposefully directs his activities at residents of the forum state, or purposefully avails himself of the privilege of conducting activities in the forum; (2) the asserted claim must be one arising out of the defendant's forum related activities; and (3) exercising jurisdiction must be reasonable. *Picot*, 780 F.3d at 1211. Plaintiff "bears the burden of satisfying the first two prongs of the test." *See Schwarzenegger*, 374 F.3d at 802.

Plaintiff does not address the *Picot* test and instead simply argues that "X Corp. operates a nationwide platform accessible in Arizona, and the harm caused by the defamatory content was felt by Plaintiff in Arizona." (Doc. 34 at 12.) The only other relevant allegations that provide a link to Arizona describe actions taken by other Defendants, not X Corp. (*See generally* Doc. 21.) The contacts between X Corp. and Arizona must be those that X Corp. creates, not the independent activity of other persons, including Plaintiff. *See Walden*, 571 U.S. at 284–86; *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 823 (8th Cir. 2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum."). The FAC lacks the allegations necessary to establish specific jurisdiction over X Corp. At bottom, the Court lacks personal jurisdiction over X Corp.

### C.  Failure to State a Claim

X Corp. argues that Section 230 immunizes it from Plaintiff's defamation and IIED claims. (Doc. 28 at 14.) In response, Plaintiff merely states that he provided "detailed allegations that meet the pleading standards" of Rule 8 for his claims. (Doc. 34 at 13.) Additionally, Plaintiff concedes that he does not seek to hold X Corp. liable as a publisher or speaker of the alleged defamatory statements. (*Id.* at 7.)

Briefly, "[§] 230 of the Communications Decency Act ('CDA') immunizes providers of interactive computer services against liability arising from content created by third parties." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265 (9th Cir. 2016) (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC* ("*Roommates*"), 521 F.3d 1157, 1162 (9th Cir. 2008)). Section 230 "protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 (9th Cir. 2009), *as amended* (Sept. 28, 2009). Section 230 immunity is meant to "protect websites not merely from ultimate liability, but [also] from having to fight costly and protracted legal battles." *Roommates*, 521 F.3d at 1175.

Plaintiff seemingly attempts to obviate § 230 immunity by conceding that he does not seek to hold X Corp. liable as a publisher or speaker under that law. (*See* Doc. 34 at 7.) Instead, Plaintiff argues that his claim against X Corp., in relevant part, is the failure to disclose the identities of the individuals allegedly defaming Plaintiff. (*Id.*) The Court is not aware of any valid cause of action that would compel X Corp. to disclose information regarding its users to Plaintiff. Moreover, X Corp.'s alleged failure to disclose is not found as a cause of action in Plaintiff's FAC, but instead appears, for the first time, in his Response brief. While district courts are not precluded from considering arguments raised for the first time in a responsive brief, *see Freeman v. Clay County Board of Commissioners*, 706 F. Supp. 3d 873, 886 (D.S.D. 2023), on a 12(b)(6) motion, the Court generally focuses on what the plaintiff has written in the complaint, *Center for Biological Diversity*, 746 F. Supp. 3d at 755.

Both the claims alleged in the FAC and the refashioned claims in Plaintiff's Response are best understood as attempts to hold X Corp. liable for its moderation practices, which also enjoy § 230 immunity. *See Brittain v. Twitter, Inc.*, No. 19-CV-00114-YGR, 2019 WL 2423375, at *2 (N.D. Cal. June 10, 2019) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune." (quoting *Roommates*, 521 F.3d at 1170–71)). "[X] qualifies as an interactive computer service." *Id.* at *2. And, assuming for a moment that Plaintiff considered X Corp. the publisher or speaker under a state law claim, the information at issue is provided by other users on X Corp.'s platform. (*See* Doc. 21.) These facts would satisfy the § 230 immunity requirements and therefore preclude Plaintiff's claims. *See Barnes*, 570 F.3d at 1101.[1]

Defendant also argues that the First Amendment independently bars Plaintiff's

---

[1] This is not the first instance in which courts have afforded X Corp. § 230 immunity. *See Yuksel v. Twitter, Inc.*, No. 22-cv-05415, 2022 WL 16748612, at *3 (N.D. Cal. Nov. 7, 2022) (finding § 230 immunized X Corp when plaintiffs sought "to hold [X Corp.] liable for decisions regarding 'information provided by another information content provider'"); *see also Sikhs for Justice, Inc. "SFJ" v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017); *Brittain*, 2019 WL 2423375 at *4 ("The [suspended] Accounts qualify as 'information provided by another information content provider.'")

claims because it protects X Corp.'s editorial decisions about what content appears on its social media platform. (Doc. 28 at 19.) Plaintiff does not address this argument and therefore concedes it. (*See* Doc. 34); *see Austin v. Transam. Life Ins. Co.*, No. CV-19-00238-TUC-SHR, 2021 WL 3666242, at *3 (D. Ariz. Aug. 18, 2021) ("Plaintiffs fail to effectively dispute Defendant's arguments and therefore concede the bad faith claim is not viable.").

Even if Plaintiff addressed the First Amendment challenge, it would still bar his claims. Indeed, "[w]hen [social media] platforms use their Standards and Guidelines to decide which third-party content those feeds will display . . . they are making expressive choices. And because that is true, they receive First Amendment protection." *Moody v. NetChoice, LLC*, 603 U.S. 707, 740 (2024). As Defendant has discussed, (Doc. 28 at 19), courts recognize that "[l]ike a newspaper or a news network, [X Corp.] makes decisions about what content to include, exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by the First Amendment." *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186–88 (N.D. Cal. 2022) (dismissing on First Amendment grounds claims based in part on X Corp.'s permanent suspension of a user's account), *aff'd on other grounds sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023); *see also Padilla*, 579 F. Supp. 3d at 1188 ("[X Corp.] has important First Amendment rights that would be jeopardized by a Court order telling [X Corp.] what content-moderation policies to adopt and how to enforce those policies."); *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021) (X Corp. "has a First Amendment right to decide what to publish and what not to publish on its platform" (internal quotation marks omitted)). Therefore, if Plaintiff responded to Defendant's argument, and if he sought to hold X Corp. liable for defamation and IIED, Plaintiff could not overcome the fact that the First Amendment would bar his claims.[2]

---

[2] Plaintiff's claims for defamation and IIED against X Corp. also fail because the only alleged facts pertain to the unknown X.com users. (*See* Doc. 21.) And even those allegations are deficient, as he merely recites the elements for the causes of action. (*See id.*); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff asserts that X Corp. has failed to comply with discovery requests. In most cases, discovery does not begin until a defendant answers the complaint or the complaint survives dismissal. *See, Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) (plaintiffs must satisfy the pleading requirements of Rule 8 before the discovery stage, not after it). In some cases, unlike this one, expedited discovery may be warranted. As it stands, X Corp. has no obligations to comply with any discovery request Plaintiff has served upon it.

## IV. LEAVE TO AMEND

Though the Court ought to grant leave to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), such leave should not be granted where "the deficiencies of a pleading 'could not possibly be cured by the allegations of other facts.'" *Ornstein v. Bank of New York Mellon*, No. CV-18-00240, 2018 WL 4679646, at *4 (D. Ariz. Sept. 28, 2018) (quoting *Lacey v. Maricopa County*, 693 F.3d 896, 926 (9th Cir. 2012)).

Although the Court construes pro se Plaintiff's FAC liberally, leave to amend is improper here. Plaintiff has utterly failed to establish either subject matter or personal jurisdiction. Additionally, Plaintiff essentially concedes that he is not asserting a defamation claim against X Corp. and his IIED claim, as alleged, is only directed at the unknown X.com users. (*See* Doc. 21.) Even if Plaintiff attempted to assert such claims, they would either be precluded by § 230 or the First Amendment. This case clearly attempts to assert defamation and IIED against X.com users, not against X Corp. The Court will therefore deny Plaintiff leave to amend and dismiss X Corp. from this case.

## V. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** granting X Corp.'s Motion to Dismiss (Doc. 28).

**IT IS FURTHER ORDERED** dismissing Plaintiff's claims against X Corp. without leave to amend.

…

…

1 **IT IS FURTHER ORDERED** that X Corp. is hereby dismissed from this case.

2 Dated this 26th day of June, 2025.

_____
Honorable Susan M. Brnovich
United States District Judge